IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CORNELIUS SMART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:20-CV-250 (MTT) |
| | ) |
| WEST CREEK FINANCIAL, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Defendant West Creek Financial, Inc. ("WCF") has moved to dismiss Plaintiff Cornelius Smart's second amended complaint (Doc. 30) for failure to state a claim. Docs. 18; 31.[1] WCF also argues that if Smart's claims are not dismissed, the Court should compel arbitration. WCF's motion (Docs. 18; 31) is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

On December 3, 2019, Smart took his personal vehicle to Calhoun's Automotive Repair for a diagnostic inspection. Doc. 30 ¶ 26. Smart was told he would be charged forty dollars for the inspection, and Smart used his debit card to pay the fee. *Id.* ¶¶ 28-29. Before the inspection was completed, a representative from Calhoun's "told Smart

---

[1] After the motion to dismiss was fully briefed, the plaintiff, with leave of court, filed a second amended complaint. The second amended complaint dropped a claim under the Georgia Payday Lending Act, a claim for willful violation of the Fair Credit Reporting Act, and a claim for negligent violation of the Fair Credit Reporting Act. Docs. 30; 15 at 23-28. The parties agreed the second amended complaint did not completely moot WCF's motion. WCF refiled its motion, and both parties refiled "briefs" that simply reincorporated the briefing already filed. Docs. 31; 32. This is why the Court cites to briefs filed before the second amended complaint.

that [Calhoun's] could help [him] obtain 'financing' for the repairs to the vehicle." *Id.* ¶ 32. Smart expressed interest in financing, but he did not commit to anything because he did not yet know the estimated cost of the repairs. *Id.* After the inspection, Smart was informed that his car needed repairs that would cost $1,200. *Id.* ¶ 34. Smart decided to look elsewhere for a better price, and he did not consent to any repairs being done on his vehicle. *Id.* ¶¶ 35, 37.

About a month later, $110.45 was transferred out of Smart's bank account by WCF. *Id.* ¶ 38. WCF is a Virginia company which, according to Smart, utilizes clever and usurious rent-to-own transactions to finance things like auto repairs. *Id.* ¶¶ 21-23. When Smart questioned WCF about the withdrawal from his account, WCF presented a rent-to-own agreement that WCF claimed Smart signed. *Id.* ¶¶ 39-41. However, Smart claims he never signed a document with WCF, never consented to financing with WCF, and never authorized WCF to withdraw money from his account. *Id.* ¶¶ 39-41, 43. At oral argument, counsel for Smart made clear that there was no contract between Smart and WCF. Instead, according to Smart, WCF inexplicably took $110.45 out of his bank account.

Although Smart asserts that he never entered into a rent-to-own agreement— hence his complaint calls it a "faux" agreement—with WCF, nearly all the claims he brings are premised on that nonexistent agreement. *Id.* ¶ 50. Specifically, Smart brings claims for violations of the Georgia Lease-Purchase Agreement Act, the Truth in Lending Act, the Georgia Industrial Loan Act, the Georgia Fair Business Practices Act, unjust enrichment, and a claim for declaratory relief. *See generally id.* WCF argues that Smart must arbitrate his claims because the contract at issue—the one Smart did

not sign or agree to—contains an arbitration clause.  Doc. 18 at 8-10.  In the alternative, WCF argues that Smart has not stated facts sufficient to state a claim because, primarily, he has not alleged the existence of any agreement with WCF.[2]  *Id.* at 12-13.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing Fed. R. Civ. P. 12(b)(6)).  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted).  The complaint must "give the defendant

---

[2] To make an odd situation even odder, counsel for WCF conceded at oral argument that Smart had alleged a Fair Credit Reporting Act claim because if there was no agreement, there was no debt and thus WCF reported a debt that did not exist.  But Smart's second amended complaint dropped that claim.  Docs. 15; 30.

fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

### III. DISCUSSION

**A. Motion to Compel Arbitration**

WCF argues that the Court should compel arbitration because Smart's "claims presume the existence of and are directly based on the lease-purchase agreement." Doc. 18 at 10-11 (capitalization omitted). WCF bases this argument on the doctrine of equitable estoppel, which "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005). But that is not what Smart is doing; he completely disavows the rent-to-own agreement.

At oral argument, counsel for WCF stated that the most analogous case to Smart's case that applied equitable estoppel to compel arbitration is *Mississippi Valley Title Insurance v. Lewis*. 2006 WL 3694603 (S.D. Miss. Dec. 13, 2006). *Lewis* is easily distinguishable. In *Lewis*, the Southern District of Mississippi held equitable estoppel prevented a party to a contract from avoiding arbitration simply because he had not signed the contract. *Id.* at *3. However, in *Lewis*, unlike here, there was no question that the contract containing an arbitration clause was operative between the parties because the contract was in effect for multiple years without objection to the terms; only when there was a breach did the party raise the lack of a signature on the contract. *Id.*

-4-

Here, Smart has alleged that he was never a party to the contract, not simply that he failed to sign it.  Doc. 30 ¶¶ 31, 32, 40, 43.  Therefore, terms in the contract, including the term requiring arbitration of disputes, do not apply to Smart.  Accordingly, WCF's motion to compel arbitration is **DENIED**.

**B.  Motion to Dismiss**

WCF argues that each of Smart's claims must be dismissed for failure to state a claim.  Doc. 18 at 12.  The Court addresses each of Smart's claims in turn.

*1. Georgia Lease-Purchase Agreement Act (GLPAA)*

Smart alleges that WCF's rent-to-own agreement "'was a lease-purchase agreement' as defined under O.C.G.A. § 10-1-681(1)."  Doc. 30 ¶ 74.  Smart further alleges that the agreement's duration violated the GLPAA's limitation.  *Id.* ¶ 76.  However, throughout the complaint and during oral argument, Smart and his attorneys' positions were that Smart was never a party to the contract that he argues violated his rights.  *Id.* ¶¶ 31, 32, 40, 43.  Moreover, at oral argument, counsel for Smart conceded that Smart had not stated a claim for violation of the GLPAA because Smart never alleged that he entered into an agreement with WCF.  Because the complaint has not alleged facts sufficient to state a GLPAA claim, that claim is **DISMISSED without prejudice.**

*2. Truth in Lending Act (TILA)*

Smart alleges that WCF is liable under the TILA for failing to make the necessary disclosures before extending credit to him.  *Id.* ¶¶ 78-84.  Specifically, Smart alleges that WCF violated the TILA "with respect to the agreements represented by the Faux Rent-to-Own Agreement."  *Id.* ¶¶ 80-81.  Smart, however, has alleged that he never

entered into an agreement with WCF.[3]  Under basic standing principles, Smart cannot "complain about any alleged misconduct regarding a loan to which [he] was not a party." *Henry v. Guaranteed Rates, Inc.*, 415 F. App'x 985, 985 (11th Cir. 2011) (holding that because a plaintiff was not a party to a loan, she "was not injured by any alleged misconduct" concerning that loan, and her claim under the TILA was properly dismissed).  Moreover, Smart cannot complain that an agreement did not contain necessary disclosures when he was never a party to that agreement.  Accordingly, Smart has not alleged facts sufficient to state a TILA claim.  Therefore, that claim is **DISMISSED without prejudice**.

    *3. Georgia Industrial Loan Act (GILA)*

Smart alleges WCF violated the GILA because "the Faux Rent-to-Own Agreements were each a loan as said term is defined under O.C.G.A. § 7-3-3(4) and each such transaction is void pursuant to O.C.G.A. § 7-3-29[4] because [WCF] has no license to make industrial loans."  Doc. 30 ¶ 87.  Smart further alleges that "[t]he effective rate of interest under the Faux Rent-to-Own Agreements of the Industrial Loan Sub-Class exceeds the maximum charge authorized under O.C.G.A. § 7-3-14(1)." *Id.* ¶ 88.

The GILA states that a "lender who fails to comply with [the GILA] shall be liable to the borrower or borrowers[.]"  O.C.G.A. § 7-3-50(d).  Smart, however, has not alleged that he is a borrower on a loan with WCF.  *See* Doc. 30 ¶ 32.  Instead, he has

---

[3] Although Smart makes clear throughout his complaint that he did not enter into an agreement with WCF, in his brief, he nonetheless relies on the agreement attached to his complaint to argue that WCF is liable under the TILA.  Smart argues that "[b]ecause WCF purposely chose the artifice of a rent-to-own agreement, the Smart Rent-to-Own Agreement lacked the mandated disclosures."  Doc. 23 at 10.

[4] Currently codified at O.C.G.A. § 7-3-50.

repeatedly stated that he did not enter into an agreement with WCF, but that they inexplicably took money from his bank account. *Id.* ¶¶ 31, 32, 40, 43. Simply put, Smart is not a borrower under the GILA. Accordingly, Smart has not alleged facts sufficient to bring a GILA claim. Therefore, that claim is **DISMISSED without prejudice**.

*4. Declaratory Relief*

Smart also seeks declaratory relief. *Id.* ¶¶ 90-93. Smart argues that "consumers will not receive the protections and benefits of Georgia law until this Court declares and affirms that WCF must comply with the requirements of the Industrial Loan Act, the limits of O.C.G.A. § 7-4-10 and 18, and cease making payday loans in Georgia." *Id.* ¶ 92. In other words, Smart asks the Court to declare that WCF must follow the law. WCF argues that Smart lacks standing to bring a claim for declaratory relief because he has not entered into an agreement with WCF and, importantly, his claim for declaratory relief is merely duplicative of his other claims for damages. Doc. 18 at 17-18.

The Declaratory Judgment Act, like Article III of the Constitution, states that for declaratory judgment to be issued there must be an actual controversy. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the types of 'Cases' and 'Controversies' that are justiciable under Article III."). Further, for a plaintiff to seek declaratory judgment in the same suit in which the plaintiff seeks money damages already incurred, the plaintiff "must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1214-15 (11th Cir. 2019) (citation omitted). In short, if a plaintiff can be

compensated for his injury, and if there is no likelihood that the plaintiff will suffer further injury, there is no need for declaratory relief.

Here, the chances of Smart incurring the same injuries caused by WCF are very slim. The "remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Brewton v. Liberty Mut. Holding Co., Inc.*, 2016 WL 224124 at *6 (M.D. Ga. Jan. 19, 2016) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985)). The mere possibility that Smart will suffer damage in the future does not rise to the level necessary to establish that he faces a substantial risk of future harm from WCF's behavior. Moreover, his claim for unjust enrichment, if successful, will provide full redress and thus declaratory relief is not necessary. Accordingly, Smart has not alleged facts sufficient to state a claim for declaratory relief. Therefore, that claim is **DISMISSED without prejudice**.

*5. Unjust Enrichment*

Smart also alleges a claim for unjust enrichment. Doc. 30 ¶¶ 94-99. Under Georgia law, "[u]njust enrichment applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Tuvim v. United Jewish Communities, Inc.*, 285 Ga. 632, 635, 680 S.E.2d 827, 829-30 (2009).

Smart alleges that "by paying … for credit services [he] conferred a benefit upon [WCF, and WCF] accepted the benefit." Doc. 30 ¶¶ 96-97. WCF argues that this is not an unjust enrichment and is instead a wrongful enrichment because Smart is relying on consumer protection statutes to show WCF's actions were unjust. Doc. 18 at 19.

However, Smart does not completely rely on those statutes in alleging WCF's unjust enrichment.

Smart has alleged a claim for unjust enrichment. Smart alleges that there was not a contract between himself and WCF, and that $110.45 was transferred out of his bank account by WCF. Doc. 30 ¶ 38. This money was taken without Smart's permission and without him receiving any bargained-for benefit.[5] Therefore, Smart provided WCF a benefit that WCF did not earn. Accordingly, Smart has alleged facts sufficient to state a claim for unjust enrichment.

*6. Georgia Fair Business Practices Act (GFBPA)*

Finally, Smart alleges a claim under the GFBPA. Doc. 30 ¶¶ 100-15. A private claim under the GFBPA has three requirements: "a violation of the Act, causation, and injury." *Zeeman v. Black*, 156 Ga. App. 82, 86-87, 273 S.E.2d 910, 916 (1980). Further, Georgia courts have stated that "a claimant who alleges the [G]FBPA was violated as the result of a misrepresentation must demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation." *Id.* A plaintiff will not be able to assert a claim under the GFBPA when she was "not induced to enter into a consumer transaction as a consequence of the defendants' acts or non-disclosure." *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 44, 502 S.E.2d 799, 805 (1998).

Smart alleges that WCF misrepresents the nature of the agreements it offers to consumers. Doc. 30 ¶¶ 106-09. Specifically, Smart alleges that WCF misrepresents

---

[5] It seems that, according to WCF's brief, this would be a textbook example of unjust enrichment because "[l]iability in unjust enrichment …. has to do with wealth being in one person's hands when it should be in another person's hands." *Guyana Tel. & Tel. Co. Ltd v. Melbourne Intern. Comms. Ltd.*, 329 F.3d 1241, 1245 n.3 (2003) (quoted by WCF at Doc. 18 at 19).

the legality of its agreements with consumers and "conceals from consumers the true nature and cost of its services[.]" *Id.* ¶¶ 106-08. However, Smart does not allege that he ever relied upon any representations from WCF.[6] On the contrary, Smart states that he did not agree to financing with WCF, and when he noticed money was transferred from his account, he informed WCF "that the transfer … was not authorized." *Id.* ¶ 39. Therefore, Smart has not alleged facts sufficient to state a GFBPA claim. Accordingly, that claim is **DISMISSED without prejudice**.

## IV. CONCLUSION

For the reasons stated above, WCF's motion to compel arbitration is **DENIED**, and WCF's motion to dismiss Smart's claims for failure to state a claim (Docs. 18; 31) is **GRANTED in part** and **DENIED in part**. The only remaining claim is Smart's claim for unjust enrichment.

**SO ORDERED**, this 5th day of February, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] Smart admits this in his brief: "The absence of reliance on the part of Mr. Smart is self-evident." Doc. 23 at 13.